IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MOULOUKOU TOURE, A-095-383-938 *
    Petitioner,

v.      * CIVIL ACTION NO. PWG-14-3963

ERIC H. HOLDER, *et al.* *
    Respondents.

\*\*\*\*\*

## MEMORANDUM

On December 18, 2014, this 28 U.S.C. § 2241 petition for writ of habeas corpus, ECF No. 1, was received for filing. Mouloukou Toure alleges that he has been housed in Immigration and Customs Enforcement ("ICE") custody at the Worcester County Detention Center since August 19, 2014. Petitioner claims that he is being held in custody beyond the expiration of the "90-day" removal period. ECF No. 1. Consequently, the Court construes his challenge as invoking the due process dictates of *Zadvydas v. Davis*, 533 U.S. 678 (2001). Toure's petition is accompanied by a motion for leave to proceed in forma pauperis. ECF No. 2. The court docket indicates, however, that Toure submitted the $5.00 habeas corpus filing fee. Therefore, the indigency request shall be denied as moot.

According to the petition, Toure is a native and citizen of Guinea who "was a Political Asylum Holder," but "[h]is Asylum was withdrawn." Pet. 1. He was ordered deported on September 15, 2014. *Id.* at 4. Toure claims that, although he has been fully cooperative with ICE to expedite his removal,[1] he "has yet to be issued any travel documents from the Guinea Consulate." *Id.*

---

[1] Toure alleges that he "has written a letter to his consulate, requesting travel documents[,] . . . given a copy of that letter to his deportation officer[,] . . . called his embassy numerous times, . . . maintained a good conduct and positive attitude" while in ICE detention, and "fully cooperated with his deportation officer and all ICE agents." Compl. 4-5.

Toure's sole contention is that his continued immigration detention violates his due process rights as ICE has been unable to carry out the final order of removal. He claims that his removal "is not likely to occur within the reasonably foreseeable future" and therefore, his detention "has exceeded the reasonable limits of government's authority." *Id.* at 5–6. To the contrary, his continuing detention is constitutional.

After a removal order becomes final, ICE must detain the alien until he is removed for up to ninety days (the "removal period").[2] *See* 8 U.S.C. § 1231(a)(2). Although § 1231(a)(6), which provides that the alien "may be detained beyond the removal period," appears to authorize discretionary indefinite detention of a removable alien beyond such period, in *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001), the Supreme Court held that post-removal-order detention under 8 U.S.C. § 1231(a) is "implicit[ly] limit[ed] . . . to a period reasonably necessary to bring about th[e] alien's removal from the United States" and "does not permit indefinite detention." The Court concluded that after an order of deportation became final, an alien may be held for a six-month period. *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the

---

[2] The ninety-day period begins on the latest of (i) the date the removal order becomes administratively final; (ii) if the order is judicially reviewed and the court issues a stay of removal, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. *See* 8 U.S.C. § 1231(a)(1)(B).

2

reasonably foreseeable future.

*Id.* The purpose of detaining a deportable alien is to "assur[e] the alien's presence at the moment of removal." *See id.* at 699. In cases where it is unlikely that removal will occur, detention of the alien no longer serves this purpose. *See Clark v. Martinez*, 543 U.S. 371, 384 (2005) (where repatriation negotiations for removal of inadmissible aliens to Cuba had ceased, removal was not reasonably foreseeable).

Toure was taken into ICE custody on August 19, 2014. He was, however, ordered removed on September 19, 2014. He has remained in ICE custody, subject to the final order of removal, for approximately three months. At this time he has not been detained beyond the reasonably presumptive period of detention recognized by the Supreme Court in *Zadvydas*. A constitutional challenge to his continued custody is premature. *See Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (six-month period of post-removal-order detention recognized by Supreme Court must have expired at the time the § 2241 petition is filed in order to state a claim under *Zadvydas*); *see also James v. Holder*, 2014 WL 6908850 (D.N.J. Dec. 5, 2014) (same). Thus, Toure's current detention violates neither procedural nor substantive due process.

The petition for writ of habeas corpus shall be denied "without prejudice to the filing of a new § 2241 petition (in a new case) upon the expiration of the six month presumptive period" if Toure still is detained and "can allege facts, at the time of filing, showing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future." *Holder*, 2014 WL 6908850, at *3.

A separate Order follows reflecting this opinion.

Date: 12/29/14

Paul W. Grimm
United States District Judge

3